# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40776
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE LUIS RODRIGUEZ-TRETO,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:13-CR-61-1

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:*

Following the denial of his motion to suppress evidence obtained during a traffic stop, Jose Luis Rodriguez-Treto entered a conditional guilty plea to being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). He was sentenced to 18 months of imprisonment and three

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

years of supervised release.[1]   He now appeals the denial of his motion to suppress.

When we consider the denial of a motion to suppress, we review factual findings and credibility determinations for clear error, and we review legal conclusions de novo.  *See United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011).  "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole."  *Id.* (internal quotation marks and citations omitted).  Where, as here, the district court denied the suppression motion after observing the demeanor of the witnesses during a live hearing, "the clearly erroneous standard is particularly strong."  *Id.* (internal quotation marks and citations omitted).  The evidence is viewed in the light most favorable to the government as the prevailing party.  *See id.*

The evidence adduced at the suppression hearing, viewed in the light most favorable to the government, showed the following.  Rodriguez-Treto was driving a dark-colored sport utility vehicle ("SUV") with tinted windows, which is consistent with the type of vehicle used by undercover law enforcement.  He was in the entry-and-exit lane of the highway, attempting to enter the highway.  An unmarked vehicle being driven by two special agents with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), maneuvered in front of Rodriguez-Treto's vehicle in the entry-and-exit lane.  Rodriguez-Treto then activated flashing emergency lights that had been installed behind the front grill of his SUV and within its taillights.  One of the agents described the lights as "strobe lights or flickering lights."  The agents initially thought they were being pulled over by an unmarked law enforcement vehicle because one of them was not wearing a seatbelt.  Rodriguez-Treto then

---

[1] Rodriguez-Treto has been released from prison, but his appeal is not moot since he continues on supervised release.  *See United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006).

changed lanes and accelerated, pulling up along the left side of the agents' vehicle. When the agents saw Rodriguez-Treto driving with his wife in the front passenger seat and a baby seat in the rear of the SUV, the officers no longer believed that it was a police vehicle. The agents testified that at that point they believed that the driver of the SUV was a "pseudo cop," or a person who portrays himself as law enforcement or emergency personnel but actually engages in drug trafficking activity. Based on that suspicion, the agents initiated a traffic stop of the SUV. During the stop, they discovered ammunition in Rodriguez-Treto's pocket. Rodriguez-Treto's wife, who jointly owned the SUV, gave permission to search it. The agents eventually found three weapons, ammunition, knives, radio scanners, and various other items.

Rodriguez-Treto argues that all the evidence found during the stop should be suppressed, because there was no justification for the stop. We analyze the reasonableness of traffic stops and resulting detentions under the framework established by *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Rains*, 615 F.3d 589, 594 (5th Cir. 2010). We first determine whether the stop "was justified at its inception" and then "whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *Id.* (internal quotation marks and citation omitted). Rodriguez-Treto challenges only the first prong of the *Terry* analysis. "An investigative vehicle stop is permissible under *Terry* when an officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot." *Id.*; *see United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "A 'mere hunch' will not suffice, but a reasonable suspicion does not need to rise to the level of probable cause." *Rains*, 615 F.3d at 594.

The district court found that at the time they initiated the stop, the agents had a reasonable suspicion that Rodriguez-Treto was committing the

state law felony offense of impersonating a police officer, *see* Tex. Penal Code § 37.11, which overlapped with the agents' suspicions, based on their experience in the area, that Rodriguez-Treto may have been a "pseudo cop" engaged in drug trafficking.

A person commits the Texas felony of impersonating a police officer if he "impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." Tex. Penal Code Ann. § 37.11(a)(1); *see Dietz v. State*, 62 S.W.3d 335, 339 (Tex. App. 2001). "The actor need not succeed in actually inducing anyone to submit to or rely on his assumed authority; all that is required is the impersonation and the intent." *Dietz*, 62 S.W.3d at 340. Rodriguez-Treto concedes that Texas law allows federal ICE agents to perform traffic stops and seizures if a state felony is committed in their presence, or if they have a reasonable suspicion that such person is engaged in a state felony. *See* Tex. Code Crim. Proc. Art. 2.122(a)(3); *Guerra v. State*, 396 S.W.3d 233, 242 (Tex. App. 2013), *aff'd*, --- S.W.3d ---, 2014 WL 2742833, at \*5 (Tex. Crim. App. June 18, 2014).

Rodriguez-Treto asserts that the facts did not establish a reasonable suspicion that he was violating § 37.11, because there was no evidence that he intended to induce the agents to pull over or otherwise submit to his pretended official authority. The district court explicitly found otherwise. The district court found that the defendant's use of the flashing lights was an overt act that would be interpreted by a reasonable person on the highway as a reason to submit to the authority of the person flashing the lights. The defendant admitted that the lights he had installed on the SUV are similar to lights used by police, and that he activated the lights because he wanted the agents' car to move out of his way. Further, the testimony shows that Rodriguez-Treto specifically directed the lights at the agents' vehicle, after they pulled in front

of him.  These facts support the district court's finding that Rodriguez-Treto intended the agents to submit to the pretended authority created by the activation of the lights.  The district court further found that once the agents saw that there were civilians in the car, including a baby seat, it was reasonable for the agents to conclude that Rodriguez-Treto was impersonating a law enforcement officer.  The activation of the lights, the directing of the lights at the agents' car, and the agents' visual observation of the occupants of the SUV are specific, articulable facts supporting a reasonable suspicion that Rodriguez-Treto was impersonating a police officer.

We therefore AFFIRM the denial of the motion to suppress.